**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

**CHRISTOPHER PATRICK SIMMONS,**

        Plaintiff,

**v.**

      **CIVIL ACTION NO.: 5:17-CV-25**
      **(STAMP)**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

        Defendant.

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This case arises from the denial of Plaintiff Christopher Patrick Simmons'

("Plaintiff") Title II application for a period of disability and disability insurance benefits

("DIB") and Title XVI application for supplemental security income ("SSI"). After

Plaintiff's application proceeded through the administrative process, a United States

Administrative Law Judge Brian P. Kilbane ("the ALJ") concluded that Plaintiff was not

disabled within the meaning of the Social Security Act. Now, Plaintiff seeks judicial

review of the ALJ's decision. Because the ALJ's decision to deny Plaintiff's claim for DIB

and SSI is supported by substantial evidence, the undersigned recommends that

Plaintiff's motion for summary judgment be denied and Defendant's motion for summary

judgment be granted.

## II.   PROCEDURAL HISTORY

On January 18, 2013, Plaintiff filed a claim for DIB and SSI, alleging that his

disability began on January 15, 2013. R. 20. Plaintiff's claims were denied initially, R.

129–31,140–42, and on reconsideration, R. 159–64. After these denials, Plaintiff filed a written request for a hearing before an ALJ. R. 166–67. On June 30, 2015, a hearing was held by videoconference before the ALJ who presided from Charlottesville, Virginia. R. 20, 40. Plaintiff, represented by counsel Harold E. Bailey, Esq., appeared in Petersburg, West Virginia, and James E. Ganoe, an impartial vocational expert, appeared by telephone. Id. Approximately two months later, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 20–32. On January 23, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1–4.

On February 27, 2017, Plaintiff, through counsel Brian D. Bailey, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (2015). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on May 1, 2017. Answer, ECF No. 6; Admin. R., ECF No. 7. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and their supporting briefs on May 31, 2017 and July 31, 2017, respectively. Pl.'s Mot. Summ. J., ECF No. 10; Def.'s Mot. Summ. J., ECF No. 14.  Plaintiff then filed a response to the Commissioner's supporting brief on August 9, 2017. Resp. Def.'s Br. Supp. Mot. Summ. J., ECF No. 16.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the

administrative record, the undersigned now issues the following Report and

Recommendation.

### III. THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following

criteria:

> [The] individual . . . [must have a] physical or mental
> impairment or impairments . . . of such severity that he is not
> only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific
> job vacancy exists for him, or whether he would be hired if
> he applied for work. . . . '[W]ork which exists in the national
> economy' means work which exists in significant numbers
> either in the region where such individual lives or in several
> regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the

following five-step sequential evaluation process to determine whether a claimant is

disabled:

> (i) At the first step, we consider your work activity, if any. If
> you are doing substantial gainful activity, we will find that you
> are not disabled.
>
> (ii) At the second step, we consider the medical severity of
> your impairment(s). If you do not have a severe medically
> determinable physical or mental impairment that meets the
> duration requirement [of twelve months] . . . or a combination
> of impairments that is severe and meets the duration
> requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of
> your impairments(s). If you have an impairment(s) that
> meets or equals one of our listings . . . and meets the
> duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920 (e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## IV.    ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ found that although Plaintiff had worked since January 15, 2013, the alleged onset date, Plaintiff had not engaged in substantial gainful activity. R. 22. At step two, the ALJ found that Plaintiff suffers from three severe impairments: affective disorder, anxiety disorder, and history of alcohol abuse/substance addiction disorder. R. 22–23. At the third step,

the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meet or medically equal the severity of one of the listed impairments. R. 23–24. Then, the ALJ determined that Plaintiff had "the [RFC] to perform a full range of work at all exertional levels," but with the following nonexertional limitations: limited to "simple, unskilled work on a sustained basis in a competitive work environment where there is no interaction with the general public and no more than occasional interaction with co-workers. R. 24–30. At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. R. 30. Then, at step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy that exist in significant numbers. R. 30–31. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 31.

## V.    DISCUSSION

### A.    Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals

for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citation omitted).

## B.    Contentions of the Parties

In his motion for summary judgment, Plaintiff contends that the ALJ's decision is not supported by substantial evidence. See generally Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 11. Specifically, Plaintiff submits that (1) the ALJ's step-three analysis was based on an incomplete review and mischaracterization of the record[1]; (2) the ALJ's decision to give great weight to the reviewing examiners' opinions is not supported by the evidence; and (3) the ALJ erred when he did not apply the "consistency prong" when evaluating Plaintiff's treating sources.[2] Id. at 1, 4–14. Based on these alleged errors, Plaintiff asks this Court to reverse the ALJ's decision below and grant him summary judgment or, alternatively, remand his case for further proceedings. ECF No. 11 at 14–15.

---

[1] This is the undersigned's understanding of Plaintiff's argument even though his argument actually reads: "Because the ALJ's Step 3 Listings analysis was not based on an incomplete review of and mischaracterizations [sic] of the record, then the ALJ's position is not based on substantial evidence." ECF No. 11 at 1, 4 (emphasis added).

[2] Plaintiff also asserts five additional arguments set forth in his response brief. The undersigned addresses those arguments in Section V.C.4.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence. See generally Def.'s Br. Supp. Mot. Summ. J, ECF No. 15. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that (1) the ALJ's determination that Plaintiff's impairments do not meet or medically equal a listed impairment is supported by substantial evidence; (2) the ALJ reasonably afforded great weight to the opinions of the state agency physicians; and (3) the ALJ reasonably discounted the medical opinions of Plaintiff's treating sources. ECF No. 15 at 6–15. Accordingly, the Commissioner requests this Court to affirm the ALJ's decision. Id. at 15.

## C.     The ALJ's Decision is Supported by Substantial Evidence

### 1.  The ALJ's Step-Three Analysis is Based on a Complete Review and Proper Characterization of the Record

Plaintiff argues that the ALJ based his step-three analysis on an incomplete review and mischaracterization of the record for four reasons.[3] ECF No. 1 at 4.

#### a.    The ALJ Properly Relied on Relevant Non-Medical Evidence of Record

First, Plaintiff argues that the ALJ's step-three analysis fails because he relies on three sources of evidence, only one of which is "medical evidence." ECF No. 11 at 4. Because the ALJ did not limit his step-three analysis to "medical facts alone," Plaintiff claims that the ALJ violated the directive contained in SSR 86-8. Id. This argument is without merit.

Although Plaintiff correctly notes that the ALJ's step three analysis must be "based on 'medical facts alone in the absence of evidence to the contrary,'" id. (quoting

---

[3] To the extent Plaintiff raises a fifth reason, the undersigned addresses it in note seven below.

SSR 86-8, 1986 WL 68636 (Jan. 1, 1986), superseded in part by SSR 91-7C, 1991 WL 321791 (Aug. 1, 1991)), that statement of law does not support his position. Indeed, SSR 86-8 plainly states that an ALJ's step-three analysis must be based on "medical facts alone <u>in absence of evidence to the contrary</u>." SSR 86-8, 1986 WL 68636 (emphasis added). Here, the ALJ properly based his step-three analysis on more than just medical facts because there was evidence to the contrary. See R. 23–24. Because there was contradictory evidence in the record, the ALJ properly relied on relevant non-medical evidence. <u>See id.</u> Accordingly, the undersigned finds no error.

### b. The ALJ Properly Concluded That Plaintiff Has No Restrictions in Activities of Daily Living

Second, Plaintiff argues that the ALJ erred (in his step-three analysis) when he concluded that Plaintiff has no restrictions in activities of daily living. ECF No. 11 at 5.

At step three, the ALJ must determine whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Here, the ALJ considered whether Plaintiff's severe impairments meet or medically equal the criteria of Listings 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.09 (substance addiction disorders).[4] R. 23.[5] To meet said listings, the claimant must satisfy the criteria of paragraphs A and B,

---

[4] These were the listings in effect from August 12, 2015 to May 23, 2016. The ALJ issued his decision on August 14, 2015. R. 32.

[5] Although the ALJ said he considered whether "the criteria of listings 12.04, 12.04 and 12.09" were satisfied (rather than listings 12.04, 12.06, and 12.09), the undersigned concludes that this error is harmless. First, the standard for satisfying the paragraph B criteria for Listings 12.04 and 12.06 are the same: The claimant must establish at least two of the following: (1) "[m]arked restriction of activities of daily living"; or (2) "[m]arked difficulties in maintaining social functioning"; or (3) "[m]arked difficulties in maintaining concentration, persistence, or pace"; or (4) "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B). Second, the paragraph C criteria for listing 12.04 is a lower standard than the paragraph C criteria of listing 12.06. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(C), 12.06(C). Because the ALJ concluded that Plaintiff does not satisfy the paragraph C criteria of listing 12.04, then the ALJ would similarly conclude that Plaintiff would not

or, in the alternative, the criteria of paragraph C. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App.
1 §§ 12.04, 12.06, 12.09. To satisfy the criteria of paragraph B, the claimant must
establish at least two of the following: (1) "[m]arked restriction of activities of daily living;
or" (2) "[m]arked difficulties in maintaining social functioning; or" (3) "[m]arked difficulties
in maintaining concentration, persistence, or pace; or" (4) "[r]epeated episodes of
decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§
12.04(B), 12.06(B).[6] Because Plaintiff does not challenge the ALJ's conclusion that he
does not satisfy the paragraph C criteria for the relevant listings, the Court need not
repeat them here.

Here, the ALJ concluded that Plaintiff's impairments do not meet or medically
equal a listed impairment because his impairments do not satisfy the criteria of
paragraph B and paragraph C.[7] R. 23–24. Plaintiff does not challenge these
conclusions.[8] <u>See generally</u> ECF No. 11. Instead, Plaintiff challenges the ALJ's
conclusion that Plaintiff has no restrictions in activities of daily living. <u>Id.</u> at 5. In support,
Plaintiff insists that if the ALJ lends credence to portions of Plaintiff's Adult Function
Report ("AFR"), then the ALJ must give credence to <u>all</u> portions of Plaintiff's AFR. <u>Id.</u>

---

satisfy the paragraph C criteria of listing 12.06, which is a higher standard. <u>See id.</u> Accordingly, the ALJ's
error, if any, is harmless.

[6] To meet or medically equal Listing 12.09 (substance addiction disorders), the claimant must meet or
medically equal any one of the following Listings: 12.02, 12.04, 12.06, 12.08, 11.14, 5.05. 5.00, 5.08,
11.02, or 11.03. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.09.

[7] For the record,

[8] Although Plaintiff suggests that the ALJ's conclusion that Plaintiff has no restrictions in activities of daily
living; moderate restrictions in social functions; moderate difficulties in concentration, persistence, or
pace; and no evidence of paragraph C criteria is suspect, that suggestion is without merit. First, the
undersigned is hardly convinced that Plaintiff's one-sentence suggestion necessitates this Court's
consideration. But even if it does, the ALJ's opinion—read as a whole—plainly satisfies his basic duty of
explanation (as explained throughout Section V.C.1.c), including why he did not give Plaintiff's treating
sources great weight. R. 23–30. Accordingly, the undersigned concludes, without hesitation, that the
ALJ's step-three analysis is supported by substantial evidence.

That is not so. Because the ALJ is required to determine whether Plaintiff has marked restrictions in activities of daily living (in order to determine whether Plaintiff satisfies the criteria of paragraph B), the ALJ is plainly entitled to consider any evidence related to Plaintiff's activities of daily living, including activities he reported on his AFR. In addition, the ALJ only needs to lend credence to Plaintiff's subjective allegations that are consistent with and supported by the record as a whole. See 20 C.F.R. §§ 404.1529, 416.929. Here, the ALJ found that Plaintiff's subjective complaints were not entirely credible. R. 27–30. For example, Plaintiff reported that he does not do anything during the day and mostly sleeps, R. 25, but Plaintiff also reported "exercising, vacuuming, washing dishes, cooking meals, driving, shoveling snow in the winter, mowing the grass and watching TV," R. 23 (citing Exhibits 7E (R. 260–67), 3F (R. 336–39)). Accordingly, the undersigned concludes that the ALJ was not required to give credence to all of Plaintiff's subjective complaints of pain, and, therefore, the ALJ's step-three conclusion that Plaintiff has no restrictions in activities of daily living is supported by substantial evidence.

But even if the ALJ did err in concluding that Plaintiff has no restrictions in activities of daily living, this error is of little import. Indeed, even if the ALJ concluded that Plaintiff has a marked restriction (which Plaintiff doesn't argue), the ALJ's conclusion that Plaintiff does not satisfy the criteria of paragraph B would remain the same. To satisfy the criteria of paragraph B, Plaintiff would have to have at least two of the following: (1) marked restrictions in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended

duration. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B). Here, the ALJ

concluded that Plaintiff only has (2) moderate difficulties in social functioning, (3)

moderate difficulties in concentration, persistence, or pace, and (4) no episodes of

decompensation. R. 23–24. Because Plaintiff does not challenge these three

conclusions,[9] Plaintiff would still not satisfy the criteria of paragraph B even if the ALJ

concluded that Plaintiff has marked restrictions in activities of daily living. Again, having

marked restrictions in activities of daily living—alone—does not mean a claimant

satisfies the criteria of paragraph B. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§

12.04(B), 12.06(B); see also Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a

claimant to show that his impairment matches a listing, it must meet all of the specified

medical criteria. An impairment that manifests only some of those criteria, no matter

how severely, does not qualify." (emphasis in original) (footnote omitted) (citation

omitted)). Accordingly, the undersigned concludes that even if the ALJ erred in

concluding that Plaintiff has no restrictions in activities of daily living, that error is

harmless.

### c.    The ALJ Properly Considered All of the Relevant Evidence of Record

Third, Plaintiff argues that the ALJ erred (in his step-three analysis) when he

ignored Plaintiff's longitudinal treatment history in favor of "a one-time, SSA-paid

examination in Exhibit 3F.[10] ECF No. 11 at 6–7.

---

[9] See supra note 7.

[10] Here, Plaintiff suggests that the Sharon Joseph's, Ph.D., examination is unreliable or should be disfavored for other treating sources because she was paid by the Social Security Administration ("SSA") and, therefore, must be implicitly biased. ECF No. 11 at 6. This argument is entirely without merit. It is well established that medical and vocational experts are not biased, or their opinions unreliable, simply because the SSA compensates them for their services. See, e.g., Nichols v. Comm'r Soc. Sec. Admin., 260 F. Supp. 2d 1057, 1070 n.37 (D. Kan. 2003) (citing Borrero Arce v. Finch, 307 F. Supp. 1071, 1074–75 (D.P.R. 1969) (rejecting argument that medical and vocational experts were biased merely because they were "paid witnesses" called to testify on behalf of the SSA)).

"As is the case throughout the sequential evaluation process, the ALJ must set forth the reasons for their step-three determination." McDaniel v. Colvin, No. 2:14-cv-28157, 2016 WL 1271509, at *4 (S.D. W. Va. Mar. 31, 2016) (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013); Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986)). "An ALJ's explanation for their step-three determination is insufficient if they state only that they considered the listing of impairments and 'offer[ ] nothing to reveal why' they made their determination." McDaniel, 2016 WL 1271509, at *4 (quoting Fox v. Colvin, 632 Fed. App'x 750, 755 (4th Cir. 2015) (emphasis in original); Radford, 734 F.3d at 295). "Rather, '[t]he ALJ should . . . identif[y] the relevant listed impairments' and 'then . . . compare[ ] each of the listed criteria to the evidence of [the claimant's] symptoms.'" McDaniel, 2016 WL 1271509, at *4 (alterations in original) (quoting Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." Id. "However, if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may provide a basis for upholding the ALJ's determination." Kiernan v. Astrue, No. 3:12CV459–HEH, 2013 WL 2323125, at *17 (E.D. Va. May 28, 2013) (emphasis added) (citing Smith v. Astrue, 457 Fed. App'x 326, 328 (4th Cir. 2011)); see also McDaniel, 2016 WL 1271509, at *4 (compiling cases stating same). "Ultimately, '[a] cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion.'" McDaniel, 2016 WL 1271509, at *4 (alterations in original) (quoting

Meador v. Colvin, No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith, 457 Fed. App'x at 328))).

Here, it is clear that the ALJ satisfied his basic duty of explanation at step three. First, the ALJ not only identified the relevant listings, but also explained why Plaintiff does not satisfy the criteria of said listings. R. 23–24. Second, even if the ALJ's step-three analysis was, alone, insufficient, "the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three . . . ." Kiernan, 2013 WL 2323125, at *17 (emphasis added) (citing Smith, 457 Fed. App'x at 328); see also McDaniel, 2016 WL 1271509, at *4 (compiling cases stating same). Indeed, the ALJ's subsequent RFC determination thoroughly explains what evidence he gave great weight and why. R. 24–30. Thus, reading the ALJ's opinion as a whole plainly "demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador, 2015 WL 1477894, at *3 (citing Smith, 457 Fed. App'x at 328). Accordingly, the undersigned concludes that the ALJ's error, if any, is harmless.

### d.    The ALJ Satisfied His Basic Duty of Explanation

Fourth, Plaintiff argues that the ALJ erred (in his step-three analysis) because he did not specify what "testimony" he relied on when he concluded that Plaintiff has "no restrictions" in activities of daily living. ECF No. 11 at 7. But this should come as no surprise because the ALJ's determination that Plaintiff has no restriction in activities of daily living was not based on Plaintiff's testimony. R. 23. Rather, the ALJ cited Exhibits 7E and 3F as a basis for said determination. R. 23. The only step-three conclusion that the ALJ based, in part, on "testimony" was his conclusion that Plaintiff has moderate difficulties with concentration, persistence, or pace. R. 23. In support of that conclusion,

the ALJ explained that Plaintiff "indicated that he has difficulty concentrating, remembering to take his medication, following instructions and dealing with stress and changes in a routine." R. 23 (citing Exhibit 7E and testimony). This explanation, of course, adequately describes the testimony the ALJ relied on when he concluded that Plaintiff has moderate difficulties with concentration, persistence, or pace. Accordingly, the undersigned concludes that the ALJ satisfied his basic duty of explanation at step three, and, therefore, the undersigned finds no error.

### 2. The ALJ Properly Explained Why He Gave the DDS Consultants Great Weight

Next, Plaintiff argues that the ALJ's opinion is not based on substantial evidence because he relies on boilerplate reasoning and does not cite any credible evidence of record. ECF No. 11 at 8. More specifically, Plaintiff argues that the ALJ does not cite any credible evidence of record to support his conclusion that the opinions of the state agency psychologists deserve great weight.[11] Id.

"The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather, 'the ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.'" Johnson v. Barnhart, 434 F.3d 650, 654 n.5 (4th Cir. 2005) (quoting Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)). But when a treating physician's opinion is

---

[11] Plaintiff also argues that the ALJ substituted his own medical opinion for that of the state agency psychologists regarding Plaintiff's alleged difficulties with activities of daily living. ECF No. 11 at 8. This argument is without merit. The ALJ did not make his own medical finding; instead, the ALJ simply concluded that the state agency psychologists' conclusion that Plaintiff has moderate restrictions in activities of daily living was inconsistent with the relevant evidence of record. R. 29–30. Determining whether the opinion of a non-examining physician or psychologists is consistent with the evidence of record is undoubtedly within the ALJ's purview. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) ("[W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record." (citing Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971)). Thus, the undersigned finds no error.

included in the record, the ALJ is required "to go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions of the treating physician and the [Disability Determination Services ("DDS")] physicians, and explaining the rationale for doing so." Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence." Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016).

Here, the ALJ did just that. In no less than five-plus pages, the ALJ reviewed all of the relevant evidence, including the opinions of Plaintiff's various treating sources (Dr. Christina Goldizen, Kathy Murphy, MA, Melinda Miller (licensed clinical social worker), and Stephanie Miller (certified nurse practitioner)) and the DDS medical consultants. R. 24–30. In those five-plus pages, the ALJ provided a thorough summary of Plaintiff's treatment history and explained how much weight he gave Plaintiff's treating sources and the DDS medical consultants and why. R. 24–30. Although Plaintiff insists that the ALJ did not identify or explain what evidence of record supports the DDS consultant's opinions, that conclusion would require the undersigned to read the ALJ's opinion in isolation. Because the ALJ provided the factual basis for giving the DDS consultants great weight in the five-plus preceding pages, the ALJ was not required to restate all of the supporting evidence on page eleven of his opinion (page thirty of the administrative record). Because the ALJ's five-plus page analysis explained his rationale for giving great weight to the opinions of the DDS medical consultants, the

undersigned concludes that the ALJ's opinion is supported by substantial evidence and finds no error.

### 3. The ALJ Reasonably Discounted the Opinions of Plaintiff's Treating Sources

Plaintiff also argues that the ALJ erred when he did not give controlling weight to the opinion of Plaintiff's treating sources because the ALJ did not apply the consistency prong of 20 C.F.R. § 404.1527(c), among other things. ECF No. 11 at 9–14.

As stated above, "[t]he ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather, 'the ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.'" Johnson, 434 F.3d at 654 n.5 (quoting Mastro, 270 F.3d at 178). Indeed, "if a [treating] physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996). "Moreover, it is the responsibility of the Commissioner, not the . . . court, to review the case, make findings of fact, and resolve conflicts of evidence." Dixon v. Chater, No. 96-1259, 1997 WL 22237, at *3 (4th Cir. Jan. 22, 1997) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)).

Here, Plaintiff's argument is based on a fundamental misunderstanding of consistency prong of 20 C.F.R. § 404.1527(c). There, the regulation states that, "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). In other words, the consistency prong requires the ALJ to compare a medical opinion against the record as a whole to determine whether that medical opinion is consistent with all of

the evidence of record. See id. The consistency prong does not require the ALJ to compare a medical opinion with other medical opinions alone. See id. Of course, if medical opinions are generally consistent with one another, they may too be consistent with the record as a whole, but not necessarily so; medical opinions may also be consistent with one another, but also inconsistent with the record as a whole. Again, "it is the responsibility of the Commissioner, not the . . . court, to review the case, make findings of fact, and resolve conflicts of evidence." Dixon, 1997 WL 22237, at *3 (citing Hays, 907 F.2d at 1456). Here, the ALJ did just that; he reviewed the opinions of Plaintiff's treating sources and compared them with the record as a whole, and, based on said comparison, the ALJ concluded that those opinions should be given less weight because there is persuasive evidence to the contrary. R. 24–30. This is plainly within the ALJ's discretion, and the undersigned will not disturb it simply because Plaintiff disagrees with the result. Mastro, 270 F.3d at 178 ("[T]he ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."); see also Craig, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Further, the ALJ properly discounted Dr. Christina Goldizen's opinion that Plaintiff had moderate limitations in activities of daily living; marked limitations in social functioning and maintaining concentration, persistence, or pace; and three episodes of decompensation. R. 29. To accept Plaintiff's argument that the ALJ did not explain how Dr. Goldizen's opinion is contradicted by the evidence of record would require the undersigned to ignore the ALJ's well-reasoned analysis in the four-plus pages that

preceded that conclusion (within his five-plus page analysis). Throughout his analysis, the ALJ provided a detailed summary of Plaintiff's treatment history, including with Dr. Goldizen. R. 24–29. Specifically, the ALJ recognized that Dr. Goldizen regularly noted that Plaintiff's mental examinations were generally normal and his condition improved as his medication was adjusted. R. 25–28 (citing R. 340–43, 512–42). Further, the record is notably devoid of any evidence to suggest that Plaintiff suffered three episodes of decompensation, as Dr. Goldizen suggests. See generally Admin. R., ECF No. 7. Accordingly, the undersigned concludes that the ALJ properly discounted Dr. Goldizen's opinion because it was inconsistent with the record as a whole and there was persuasive evidence to the contrary. See Mastro, 270 F.3d at 178 ("[T]he ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

Likewise, the ALJ properly discounted the opinions of Plaintiff's other treating sources, Kathy Murphy, MA, Melinda Miller (licensed clinical social worker), and Stephanie Miller (certified nurse practitioner). First, substantial evidence supports the ALJ's determination that Ms. Murphy's one-time examination of Plaintiff was entitled to little weight because that examination took place when Plaintiff was regularly abusing alcohol and that abuse was documented. R. 29; see also R. 25–26 (detailing some of Plaintiff's alcohol abuse). In response, Plaintiff argues that because the ALJ readily accepted the one-time examination conducted by a DDS consultant, the ALJ must also except the one-time examination conducted by Ms. Murphy. ECF No. 11 at 13. That simply isn't true. The ALJ properly discounted Ms. Murphy's opinion because it was skewed by Plaintiff's alcohol abuse, which is now in remission. Because Plaintiff

hasn't—by his own account—had a drink in two years, R. 25, the ALJ properly discounted Ms. Murphy's opinion in favor of medical opinions that were based on Plaintiff's condition during remission.

Second, substantial evidence too supports the ALJ's decision that Ms. Melinda Miller's opinion was entitled to little weight. In support, the ALJ explained that Ms. Melinda Miller's opinion that Plaintiff suffers from moderately severe to serve limitations in understanding, memory, sustained concentration and persistence, and social interactions appeared to be based on Plaintiff's subjective complaints of pain, which the ALJ determined was less than credible. R. 27–28, 29. Indeed, after comparing that opinion against the record as a whole, the ALJ concluded that Ms. Melinda Miller's opinion was inconsistent with the findings of repeated mental status examinations, which notably excluded any ongoing concentration, attention, and memory deficits. R. 28–29. As stated above, it is well within the ALJ's "discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." <u>Mastro</u>, 270 F.3d at 178. Plaintiff's arguments to the contrary are unavailing.

Third, substantial evidence supports the ALJ's decision that Ms. Stephanie Miller's opinion was entitled to little weight for three reasons. Specifically, the ALJ explained that (1) Ms. Stephanie Miller is not an acceptable medical source, (2) her opinion was based on Plaintiff's subjective complaints, and (3) she treated Plaintiff for a relatively short period of time. R. 29. In response, Plaintiff argues—without citation to law or fact—that "the Commissioner indicates that a nurse practitioner is entirely capable of opining as to a claimant's limitations." ECF No. 11 at 12. That is not so. This Court has regularly acknowledged that "a nurse practitioner is not considered an

'acceptable medical source' under 20 C.F.R. § 404.1513," and, therefore, the ALJ is "under no obligation to give deference to" a nurse practitioner's conclusions. <u>Baughman v. Colvin</u>, No. 3:15–CV–116, 2017 WL 253958, at *4 (N.D. W. Va. Jan. 20, 2017) (adopting report and recommendation); <u>see also</u> <u>Holcomb v. Comm'r Soc. Sec.</u>, No. 5:13CV144, 2014 WL 3824027, at *2 (N.D. W. Va. Aug. 4, 2017) (adopting report and recommendation) ("[N]urse practitioners are not considered acceptable medical sources under 20 C.F.R. § 404.1513(d)(1)."). Here, the ALJ satisfied his basic duty of explanation by noting that he would give Ms. Stephanie Miller's opinion little weight because she was not an acceptable medical source. <u>Smith v. Berryhill</u>, No. 5:16CV128, 2017 WL 3616634, at *3 (N.D. W. Va. Aug. 23, 2017) (adopting report and recommendation) (noting that nurse practitioners "do not fall within the Agency's list of 'acceptable medical sources,' and, thus, the ALJ was entitled to give their opinions lesser weight than the opinions of acceptable medical sources, so long as the ALJ explained the weight he gave to their opinions"). The ALJ's second and third reasons for giving Ms. Stephanie Miller's opinion little weight only further proves that the ALJ's decision is supported by substantial evidence. Again, Plaintiff's arguments to the contrary are unavailing.

Notably, this case is not like <u>Buchanan v. Colvin</u>, No. 1:14cv209, 2016 WL 485339 (W.D.N.C. Jan. 19, 2016). In <u>Buchanan</u>, the ALJ failed to address the medical opinions of Plaintiff's three treating sources. 2016 WL 485339, at *4. By contrast, the ALJ, here, addressed <u>all</u> of Plaintiff's treating sources, and the ALJ explained what weight he gave said opinions and why. Accordingly, the undersigned finds no error.[12]

---

[12] As stated above, Plaintiff's argument that the DDS consultants are biased simply because they are paid by the SSA is without merit. See <u>supra</u> note 9. So too is Plaintiff's argument that the ALJ improperly

### 4. Plaintiff's Response Arguments Are Waived or Without Merit

In his response brief, Plaintiff also argues that (1) the ALJ's step-three listing analysis is deficient; (2) the ALJ substituted his own medical opinion for the opinions of Plaintiff's treating sources; and (3) the ALJ ignored relevant evidence when determining Plaintiff's RFC. <u>See generally</u> ECF No. 16.[13] These arguments fail for two reasons.

First, Plaintiff waived these arguments by failing to include them in his brief in support of his motion for summary judgment. In this district, the plaintiff seeking judicial review of the Commissioner's final decision is directed to file a motion for summary judgment and supporting memorandum setting forth <u>all</u> errors that the plaintiff believes entitles him or her to relief. <u>See</u> L.R. Civ. P. 9.02(c). After the plaintiff files his or her brief, the Commissioner is directed to submit her own motion for summary judgment and supporting memorandum that "specifically addresses all of the contentions and arguments made by the plaintiff in the same order in which the plaintiff has stated them in his or her Motion and Memorandum in Support." L.R. Civ. P. 9.02(d). In other words, although each party is directed to file their own motions for summary judgment, the plaintiff's brief operates as the opening brief, and the Commissioner's brief operates as a response. <u>See</u> L.R. Civ. P. 9.02(c), (d).

---

substituted his own lay medical opinion for that of Plaintiff's treating sources is without merit. The ALJ did not substitute is own lay medical opinion for any of Plaintiff's treating sources; He properly compared the opinions of Plaintiff's treating sources against the record as a whole, determined whether those opinions were consistent with said record, and what weight said opinions should receive and why. R. 24–30.

[13] Plaintiff's response also reiterates three arguments set forth in his motion for summary judgment and supporting memorandum: that the ALJ (1) improperly relied on the DDS consultants, ECF No. 16 at 4–5, (2) did not explain what "credible evidence of record" he was referring to, <u>id.</u> at 5–6, and (3) did not apply the consistency prong and improperly discounted the opinions of Plaintiff's treating physicians in favor of the DDS consultants, <u>id.</u> at 6–7. These arguments fail for the same reasons stated above. The ALJ properly discounted the opinions of Plaintiff's treating sources and, instead, relied on the DDS consultants, <u>see</u> <u>supra</u> Sections 5.C.2 and 5.C.3; the ALJ also explained what credible evidence of record he was referring to, <u>see</u> <u>supra</u> Section 5.C.2.

Here, Plaintiff and the Commissioner filed their respective motions and supporting memoranda, as directed. See ECF Nos. 10, 11, 14, 15. However, soon thereafter, Plaintiff also filed a response to the Commissioner's brief in support of her motion for summary judgment. Because Local Rule of Civil Procedure 9.02(d) required the Commissioner to respond to the contentions and arguments set forth in Plaintiff's initial motion and supporting brief, Plaintiff's subsequent "response" effectively operates as a reply. In that regard, it is well established that "arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived." Moseley v. Branker, 550 F.3d 312, 325 n. 7 (4th Cir. 2008) (citing Cavallo v. Star Enter., 100 F.3d 1150, 1152 n. 2 (4th Cir. 1996)). Because Plaintiff raises these new arguments for the first time in his response brief (effectively his reply), they are deemed waived. See id. Accordingly, the undersigned need not address them.

Second, even if Plaintiff did not waive these arguments, the undersigned nevertheless concludes that they are without merit.

### a. The ALJ's Step-Three Listing Analysis is Supported by Substantial Evidence

In his response, Plaintiff argues for the first time that the ALJ's step-three listing analysis should fail because the ALJ relied only relied on activities of daily living to substitute his own opinion for that of Plaintiff's treating sources. See ECF No. 16 at 1. But this argument is without merit. Here, the ALJ did not substitute his own opinion for that of Plaintiff's treating sources. Indeed, the ALJ relied on Plaintiff's mental status examination which, the ALJ noted, found that Plaintiff did not have ongoing memory deficits or any more than moderately impaired concentration. R. 23–24. The ALJ also concluded that Plaintiff had no episodes of decompensation because he had never

been hospitalized because of his psychiatric condition. R. 24. In fact, the record plainly

documents that the only time Plaintiff was referred to an emergency room for psychiatric

treatment (in his words, to be admitted into the rubber room), he was released on his

own recognizance because he was not a threat to himself or others. R. 25–26 (citing

Exhibit 1F (R. 313–20)). Because the ALJ (1) did not substitute his own law medical

opinion for that of Plaintiff's treating physicians and (2) relied on more than Plaintiff's

activities of daily living, the undersigned readily concludes that the ALJ's step-three

analysis is supported by substantial evidence. Even if the ALJ's step-three analysis is,

alone, insufficient, the undersigned concludes that the ALJ's subsequent RFC

determination rectifies any such error. As stated above, the ALJ's opinion cannot be

read in isolation. See Kiernan, 2013 WL 2323125, at *17 ("However, if the ALJ's opinion

read as a whole provides substantial evidence to support the ALJ's decision at step

three, such evidence may provide a basis for upholding the ALJ's determination." (citing

Smith, 457 Fed. App'x at 328)). Therefore, the undersigned finds no error.

### b.    The ALJ Did Not Substitute His Own Medical Opinion for Those of Plaintiff's Treating Physicians

Next, Plaintiff argues for the first time that the ALJ substituted his own lay

medical opinion for that of Plaintiff's treating sources because they were aware of

Plaintiff's activities of daily living, and the ALJ used the said activities to conclude that

Plaintiff does not have marked limitations in the same. ECF No. 16 at 2. This argument

is unavailing. An ALJ does not substitute his own medical opinion for that of the

claimant's treating sources simply by virtue of discussing the plethora of activities that

the claimant engages in on a daily basis, some of which may have been reported to a

treating source. It is well understood "that an ALJ may consider a claimant's daily

activities in assessing the severity of a claimant's symptoms such as pain." <u>Ellis v. Colvin</u>, No. 5:13cv00043, 2014 WL 2862703, at *11 (W.D. Va. June 24, 2014) (citations omitted); <u>see also</u> 20 C.F.R. § 404.1529(c)(3) (stating that the ALJ can consider activities of daily living to determine the severity of a claimant's impairment). "Likewise, an ALJ may also consider a claimant's activities of daily living in weighing opinions of medical experts." <u>Id.</u> (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Here, the undersigned is satisfied that the ALJ's consideration of Plaintiff's daily activities comfortably fits within §§ 404.1527(c)(4) and 404.1529(c)(3). Accordingly, the undersigned finds no error.

### c.    The ALJ Properly Considered All Relevant Evidence of Record When Determining Plaintiff's RFC

Lastly, Plaintiff argues for the first time in his response that the ALJ's determination of Plaintiff's RFC should fail because it is not based on a complete review of the record. ECF No. 16 at 3–4. This argument is without merit.

Generally, "[a]n ALJ is required to <u>consider</u> all of the relevant medical evidence submitted by a claimant." <u>Ryman v. Colvin</u>, No. 2:16-CV-37, 2017 WL 1682588, at *15 (N.D. W. Va. Apr. 17, 2017) (emphasis in original) (citing 20 C.F.R. § 404.1520), <u>adopted</u>, 2017 WL 1734039 (N.D. W. Va. May 2, 2017). "However, an ALJ is 'not obligated to <u>comment</u> on every piece of evidence presented.'" <u>Id.</u> (emphasis in original) (quoting <u>Pumphrey v. Comm'r Soc. Sec.</u>, No. 3:14-CV-71, 2015 WL 3868354, at *3 (N.D. W. Va. June 23, 2015)); <u>see</u> <u>Reid v. Comm'r Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ." (quoting <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th

Cir. 2005))); see also Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite to specific evidence does not indicate that it was not considered."); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ("[T]he ALJ need not evaluate in writing every piece of testimony and evidence submitted." (citations omitted)).

Here, the ALJ satisfied his basic duty of explanation when determining Plaintiff's RFC. As stated above, the ALJ's analysis spanned no less than five-plus pages, which provided, among other things, a detailed summary of Plaintiff's entire treatment history. R. 24–30. Indeed, the ALJ summarized Plaintiff's treatment history and testimony, the findings of various treating sources, and, most importantly, explained what weight the ALJ gave the evidence and why. Id. Although Plaintiff insists that the ALJ's determination of Plaintiff's RFC was not based on all of the evidence record, what Plaintiff ultimately takes issue with is the ALJ's decision to give less weight to the opinions of Plaintiff's treating sources and the ALJ's ultimate conclusion that Plaintiff has moderate difficulties (rather than marked difficulties) in concentration, persistence, or pace. As discussed above, that argument is too without merit. Thus, under the circumstances, the undersigned is readily concludes that the ALJ considered all of the evidence of record (even if he did not comment on all of the evidence). See Ryman, 2017 WL 1682588, at *15 (citations omitted). And the undersigned finds no error.

## VI.    RECOMMENDATION

For the foregoing reasons, I find that the Commissioner's decision denying Plaintiff's claim for DIB and SSI is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 10] be **DENIED**,

Defendant's Motion for Summary Judgment [ECF No. 14] be **GRANTED**, the decision of the Commissioner be **AFFIRMED** and this case be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections with the Clerk of the Court. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 22nd day of December, 2017.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE